## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Chapter 7 |
| | ) | Case No. 09-45896 |
| CANDICE MARIE DeSIMONE AND | ) | Hon.  Pamela S. Hollis |
| JOHN VITO DeSIMONE | ) | |
| | ) | |
| Debtors. | ) | Hearing Date:  October 28, 2010 |
| | ) | Hearing Time:  10:00 a.m. |

### ORDER APPROVING SALE CONTRACT, AUTHORIZING SALE OF
### REAL ESTATE FREE AND CLEAR OF LIENS, CLAIMS,
### AND INTERESTS, AND GRANTING OTHER RELATED RELIEF

This case coming to be heard on Trustee's Motion to Sell Real Estate Free and Clear of Liens and For Other Relief (the "Motion" or the "Sale Motion")[1] filed on behalf of Andrew J. Maxwell (the "Trustee"), the duly appointed and acting trustee in bankruptcy of the estates of the debtors, Candice Marie DeSimone and John Vito DeSimone (the "Debtors"), seeking the entry of an order pursuant to 11 U.S.C. §§ 363(b) and (f) and Fed. R. Bankr. P. 2002, 6004, 9006, 9007, and 9014 approving and authorizing a sale of certain residential real property commonly known as 1305 E. Palatine Road, Palatine, Illinois (the "Real Estate") free and clear of liens, claims, and interests to Somei Leong and Sing Ching Wong for $410,000.00 (the "Initial Offer"), subject to any higher and better offers received by the Trustee prior to the conclusion of the hearing (the "Sale Hearing") on the Sale Motion, and at the Sale Hearing the Trustee having received two (2) higher and better offers than the Initial Offer, and the Court being advised that the Trustee has accepted and recommended for approval the offer of Mehul Kala (the

---

[1] Unless otherwise indicated, all of the capitalized terms used herein shall have the same meanings ascribed to such terms in the Motion.

"Purchaser") to purchase the Real Estate for the price of $426,000,.00 (the "Purchase Price") pursuant to the terms and conditions of a certain real estate contract (the "Sale Contract") dated October 28, 2010, a copy of which is attached hereto as Exhibit A, and the Court having reviewed and considered the Sale Motion and all other matters of record pertaining thereto and having heard the statements of the Trustee's attorney and other counsel of record, including counsel for FirstMerit Bank, N.A. ("FirstMerit"), successor in interest for the Federal Deposit Insurance Corporation, as Receiver for Midwest Bank and Trust Company, and counsel for Robert J. Bosco, and based upon the foregoing, the Court hereby **FINDS AND DETERMINES that**:

A.     This Court has jurisdiction over the Sale Motion pursuant to 28 U.S.C. §§ 157 and 1334, and the Motion is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A) and (N).

B.     As evidenced by the Certificate of Service filed with the Sale Motion, fourteen (14) days' notice of the Sale Motion has been provided to the Debtors, all their known creditors, and other parties in interest, and for the reasons stated in the Motion, and for cause shown, notice is reduced accordingly and deemed sufficient. The notice of the Motion and the Sale Hearing provided by the Trustee is sufficient and appropriate under the circumstances, and no other or further notice of the Motion or the Sale Hearing is or was required.

C.     A reasonable opportunity to object or to be heard with respect to the Sale Motion and the relief requested therein has been afforded to all parties in interest, including those persons and entities known to have asserted any lien, claim, or interest in or against the Real Estate, and no objection to the relief requested in the Sale Motion was filed or made prior to or at the Sale Hearing.

D.     FirstMerit has consented to the sale of the Real Estate subject to the terms, conditions, and limitations of that certain Settlement Agreement between the Trustee and FirstMerit dated September 24, 2010, and approved by prior order of this Court dated October 5,

2

2010 (the "Settlement Order"), and pursuant to the Settlement Order and the Trustee's stipulation and agreement, FirstMerit holds a valid, perfected, and unavoidable first-priority lien on the Real Estate and is entitled to be paid at closing in accordance with the terms of the Settlement Order.

E.    Any holder of a lien, claim, or interest which is not the subject of a *bona fide* dispute and who did not object to the Sale Motion is deemed to have consented to the sale of the Real Estate pursuant to Section 362(f)(2).

F.    The Purchase Price to be paid under the Sale Contract is the highest and best offer for the Real Estate, and the sale to the Purchaser is in the best interest of the Debtors' estates and their creditors.

G.    The Purchaser is a good faith purchaser within the meaning of Section 363(m) of the Bankruptcy Code, and as such is entitled to all of the protections afforded thereby, and the Court so determines.

**NOW, THEREFORE**, the Court being fully advised in the premises, it is hereby **ORDERED, ADJUDGED AND DECREED** that:

1.    The Sale Motion is granted as modified at the hearing.

2.    The Sale Contract (including all riders and related documents attached thereto) and the transactions contemplated thereby are hereby approved in all respects.

3.    The Trustee is authorized to sell the Real Estate to the Purchaser pursuant to the terms of the Sale Contract free and clear of all liens, claims, and interests pursuant to Section 363(f) of the Bankruptcy, and such liens, claims, and interests shall attach to the proceeds of the sale in the same order of priority and with the same validity, force and effect as they now have against the Real Estate.

4.      **The sale of the Real Estate to the Purchaser is on an "AS IS" and "WHERE IS" basis and without any representations or warranties of any kind, nature, or description whatsoever, express or implied, by the Trustee or his agents regarding the Real Estate.**

5.      The Trustee is hereby empowered, authorized and directed to perform under, consummate, and implement the Sale Contract, and to execute all instruments and documents that may be reasonably necessary or desirable to implement the Sale Contract, and to take all further action as may be reasonably necessary or appropriate to satisfy and effectuate the terms and conditions of the Sale Contract and to consummate the sale of the Real Estate to the Purchaser.

6.      The Trustee is authorized and directed to pay at closing from the proceeds of the sale hereby approved, in accordance with the terms and provisions of the Settlement Order, the following: (a) first, the usual and customary costs of closing, including prorations for real estate taxes and title charges; (b) second, the broker's commission as provided for in the listing agreement not to exceed 5% of the Purchase Price; (c) third, FirstMerit shall be paid on account of its secured claim 90% of the "Net Sale Proceeds" (as that term is defined in the Settlement Order) or $290,000.00, whichever amount is greater; and (d) lastly, the Trustee shall retain the remaining Net Sale Proceeds for the benefit of the estate (the "Estate's Proceeds"); provided, however, that the Trustee may, if necessary or required, deposit with the title company all or part of the Estate's Proceeds pending the Court's determination of any disputed lien, claim, or interest, including, without limitation, the alleged lien of Robert and Denise Bosco.

7.      Upon payment of the Purchase Price by the Purchaser, all persons or entities holding or asserting any liens, claims, interests, or encumbrances in or against the Real Estate shall be, and hereby are, forever barred, estopped, and enjoined from asserting, prosecuting, or otherwise pursuing any such liens, claims, interests, or encumbrances against the Purchaser or

the Real Estate, or interfering with the Purchaser's title to, or use, possession, and enjoyment of, the Real Estate.

8.    The Court retains jurisdiction to: (a) interpret, implement, and enforce the terms and provisions of this Order, the Sale Contract and any amendments thereto, and any agreements executed in connection therewith; (b) resolve any disputes arising under the Sale Contract or the sale of the Real Estate to the Purchaser; (c) adjudicate all issues concerning the liens, claims, interests, and encumbrances in and against the Real Estate and the sale proceeds, including the validity, extent, and priority thereof; and (d) compel delivery of possession of the Real Estate to the Purchaser.

9.    In the event any provision of this Order conflicts with or derogates from the terms and provisions of the Settlement Order, the Settlement Order shall control and supersede this Order.

10.    This is a final order and, notwithstanding Fed. R. Bankr. P. 6004(h), shall be effective immediately upon entry.

Date: **NOV  2 2010**

ENTER: _____
United States Bankruptcy Judge

**Prepared By:**
August A. Pilati, Esq. (03125503)
AUGUST A. PILATI AND ASSOCIATES, LTD.
Attorneys for FirstMerit Bank, N.A.
53 West Jackson Boulevard, Suite 528
Chicago, Illinois 60604
(312) 726-3100



# MULTI-BOARD RESIDENTIAL REAL ESTATE CONTRACT 5.0



1  **1. THE PARTIES:** Buyer and Seller are hereinafter referred to as the "Parties".

2  Buyer(s) (Please Print) ___MEHUL KALA___

3  Seller(s) (Please Print) ___ANDREW J MAXWELL, Trustee___

4  If Dual Agency applies, complete Optional Paragraph 41.

5  **2. THE REAL ESTATE:** Real Estate shall be defined as the Property, all improvements, the fixtures and
6  Personal Property included therein. Seller agrees to convey to Buyer or to Buyer's designated grantee, the
7  Real Estate with the approximate lot size or acreage of ___per survey___ commonly known as:

8  ___1305 E Palatine Road, Palatine    IL   60074___
9  Address                                            City                      State        Zip

10 ___Cook___                                                      ___02242060310000___
11 County                          Unit # (if applicable)              Permanent Index Number(s) of Real Estate

12 If Condo/Coop/Townhome Parking is Included: # of space(s) ____; identified as Space(s) #_____;
13 (check type) ☐ deeded space ☐ limited common element ☐ assigned space.

14 **3. FIXTURES AND PERSONAL PROPERTY:** All of the fixtures and included Personal Property are owned by
15 Seller and to Seller's knowledge are in operating condition on the Date of Acceptance, unless otherwise
16 stated herein. Seller agrees to transfer to Buyer all fixtures, all heating, electrical, plumbing and well systems
17 together with the following items of Personal Property by Bill of Sale at Closing:
18 [Check or enumerate applicable items]

19 ☒ Refrigerator         ☒ Central Air Conditioning   __ Central Humidifier        ☒ Light Fixtures, as they exist
20 ☒ Oven/Range/Stove   __ Window Air Conditioners   __ Water Softener (owned)    ☒ Built-in or Attached Shelving
21 ☒ Microwave           ☒ Ceiling Fan(s)            ☒ Sump Pumps              ☒ All Window Treatments & Hardware
22 ☒ Dishwasher          __ Intercom System          __ Electronic or Media Air Filter  ☒ Existing Storms & Screens
23 ☒ Garbage Disposal    __ TV Antenna System        __ Central Vac & Equipment   ☒ Fireplace Screens/Doors/Grates
24 __ Trash Compactor     __ Satellite Dish           __ Security Systems (owned)  __ Fireplace Gas Logs
25 __ Washer             __ Outdoor Shed             ☒ Garage Door Openers       __ Invisible Fence System, Collars & Box
26 __ Dryer              __ Planted Vegetation          with all Transmitters     ☒ Smoke Detectors
27 __ Attached Gas Grill  __ Outdoor Playsets         ☒ All Tacked Down Carpeting  ☒ Carbon Monoxide Detectors
28 Other items included: _____
29 Items NOT included: _____
30 Seller warrants to Buyer that all fixtures, systems and Personal Property included in this Contract shall be in
31 operating condition at Possession, except: _____
32 A system or item shall be deemed to be in operating condition if it performs the function for which it is
33 intended, regardless of age, and does not constitute a threat to health or safety.
34 Home Warranty ☐ shall ☒ shall not be included at a Premium not to exceed $_____.

35 **4. PURCHASE PRICE:** Purchase Price of $___426,000___ shall be paid as follows: Initial earnest money
36 of $___2000___ by ☒ check, ☐ cash OR ☐ note due on ___acceptance___, 20___ to be increased
37 to a total of $___10,000___ by ___2 days after attorney review___, 20___. The earnest money shall be held by the
38 [check one] ☐ Seller's Broker ☐ Buyer's Broker as "Escrowee", in trust for the mutual benefit of the Parties.
39 The balance of the Purchase Price, as adjusted by prorations, shall be paid at Closing by wire transfer of

---

Buyer Initial ___MK___   Buyer Initial _____   Seller Initial ___M___   Seller Initial _____
Address ___1305 E. Palatine Road___

1                                                                              v5.0e

40 funds, or by certified, cashier's, mortgage lender's or title company's check (provided that the title company's
41 check is guaranteed by a licensed title insurance company). *Dec 10* *MK*

42 **5. CLOSING:** Closing or escrow payout shall be on ~~Nov 22~~, 20 10 or at such time as mutually
43 agreed by the Parties in writing. Closing shall take place at the escrow office of the title company (or its
44 issuing agent) that will issue the Owner's Policy of Title Insurance, situated nearest the Real Estate or as shall
45 be agreed mutually by the Parties.

46 **6. POSSESSION:** Unless otherwise provided in Paragraph 39, Seller shall deliver possession to Buyer at the
47 time of Closing. Possession shall be deemed to have been delivered when Seller has vacated the Real Estate
48 and delivered keys to the Real Estate to Buyer or to the office of the Seller's Broker.

49 **7. STATUTORY DISCLOSURES:** If applicable, prior to signing this Contract, Buyer *[check one]* ❑ has ☒ has
50 not received a completed Illinois Residential Real Property Disclosure Report; *[check one]* ❑ has ☒ has not
51 received the EPA Pamphlet, "Protect Your Family From Lead in Your Home"; *[check one]* ❑ has ☒ has not
52 received a Lead-Based Paint Disclosure; *[check one]* ❑ has ☒ has not received the IEMA Pamphlet "Radon
53 Testing Guidelines for Real Estate Transactions"; *[check one]* ❑ has ☒ has not received the Disclosure of
54 Information on Radon Hazards. *No Disclosures Court Ordered Sale*

55 **8. PRORATIONS:** Proratable items shall include, without limitation, rents and deposits (if any) from tenants;
56 Special Service Area or Special Assessment Area tax for the year of Closing only; utilities, water and sewer;
57 and Homeowner or Condominium Association fees (and Master/Umbrella Association fees, if applicable).
58 Accumulated reserves of a Homeowner/Condominium Association(s) are not a proratable item. Seller
59 represents that as of the Date of Acceptance Homeowner/Condominium Association(s) fees are $ *NA*
60 per *NA* (and, if applicable, Master/Umbrella Association fees are $ *NA* per *NA* ). Seller agrees
61 to pay prior to or at Closing any special assessments (by any association or governmental entity) confirmed
62 prior to the Date of Acceptance. Installments due after the year of Closing for a Special Assessment Area or
63 Special Service Area shall not be a proratable item and shall be payable by Buyer. The general Real Estate
64 taxes shall be prorated as of the date of Closing based on *100* % of the most recent ascertainable full year
65 tax bill. All prorations shall be final as of Closing, except as provided in Paragraph 20. If the amount of the
66 most recent ascertainable full year tax bill reflects a homeowner, senior citizen or other exemption, a senior
67 freeze or senior deferral, then Seller has submitted or will submit in a timely manner all necessary
68 documentation to the appropriate governmental entity, before or after Closing, to preserve said exemption(s).

69 **9. ATTORNEY REVIEW:** Within five (5) Business Days after the Date of Acceptance, the attorneys for the
70 respective Parties, by Notice, may:
71 (a) Approve this Contract; or
72 (b) Disapprove this Contract, which disapproval shall not be based solely upon the Purchase Price; or
73 (c) Propose modifications except for the Purchase Price. If within ten (10) Business Days after the Date of
74     Acceptance written agreement is not reached by the Parties with respect to resolution of the proposed
75     modifications, then either Party may terminate this Contract by serving Notice, whereupon this Contract
76     shall be null and void; or
77 (d) Propose suggested changes to this Contract. If such suggestions are not agreed upon, neither Party may
78     declare this Contract null and void and this Contract shall remain in full force and effect.
79 Unless otherwise specified, all Notices shall be deemed made pursuant to Paragraph 9(c). If Notice is not
80 served within the time specified herein, the provisions of this paragraph shall be deemed waived by the
81 Parties and this Contract shall remain in full force and effect.

| Buyer Initial *MK* | Buyer Initial _____ | Seller Initial *OV* | Seller Initial _____ |
|---|---|---|---|
| Address *1305 E Palatine Road* | | | v5.0e |

82 **10. PROFESSIONAL INSPECTIONS AND INSPECTION NOTICES:** Buyer may conduct at Buyer's expense
83 (unless otherwise provided by governmental regulations) a home, radon, environmental, lead-based paint
84 and/or lead-based paint hazards (unless separately waived), and/or wood destroying insect infestation
85 inspection of the Real Estate by one or more licensed or certified inspection service(s).

86 (a) Buyer agrees that minor repairs and routine maintenance items of the Real Estate do not constitute
87 defects and are not a part of this contingency. **The fact that a functioning major component may be at**
88 **the end of its useful life shall not render such component defective for purposes of this paragraph.**
89 Buyer shall indemnify Seller and hold Seller harmless from and against any loss or damage caused by the
90 acts or negligence of Buyer or any person performing any inspection. The home inspection shall cover
91 only the major components of the Real Estate, including but not limited to central heating system(s),
92 central cooling system(s), plumbing and well system, electrical system, roof, walls, windows, ceilings,
93 floors, appliances and foundation. A major component shall be deemed to be in operating condition if it
94 performs the function for which it is intended, regardless of age, and does not constitute a threat to health
95 or safety. If radon mitigation is performed, Seller shall pay for any retest.

96 (b) Buyer shall serve Notice upon Seller or Seller's attorney of any defects disclosed by any inspection for
97 which Buyer requests resolution by Seller, together with a copy of the pertinent pages of the inspection
98 reports within five (5) Business Days (ten (10) calendar days for a lead-based paint and/or lead-based
99 paint hazard inspection) after the Date of Acceptance. If within ten (10) Business Days after the Date of
100 Acceptance written agreement is not reached by the Parties with respect to resolution of all inspection
101 issues, then either Party may terminate this Contract by serving Notice to the other Party, whereupon this
102 Contract shall be null and void.

103 (c) Notwithstanding anything to the contrary set forth above in this paragraph, in the event the inspection
104 reveals that the condition of the Real Estate is unacceptable to Buyer and Buyer serves Notice to Seller
105 within five (5) Business Days after the Date of Acceptance, this Contract shall be null and void.

106 (d) Failure of Buyer to conduct said inspection(s) and notify Seller within the time specified operates as a
107 waiver of Buyer's right to terminate this Contract under this Paragraph 10 and this Contract shall remain
108 in full force and effect. *Sold As-Is*

109 **11. MORTGAGE CONTINGENCY:** This Contract is contingent upon Buyer obtaining a firm written mortgage
110 commitment (except for matters of title and survey or matters totally within Buyer's control) on or before
111 ~~Dec 3 Nov 15~~, 20 10 for a *[check one]* X fixed ☐ adjustable; *[check one]* ☐ conventional ☐ FHA/VA
112 (if FHA/VA is chosen, complete Paragraph 35) ☐ other_____ loan of ~~75~~ % of Purchase
113 Price, plus private mortgage insurance (PMI), if required. The interest rate (initial rate, if applicable) shall not
114 exceed 4.5 % per annum, amortized over not less than 30 years. Buyer shall pay loan origination fee
115 and/or discount points not to exceed ~~2.0~~ % of the loan amount. Buyer shall pay the cost of application,
116 usual and customary processing fees and closing costs charged by lender. (Complete Paragraph 33 if closing
117 cost credits apply.) Buyer shall make written loan application within five (5) Business Days after the Date of
118 Acceptance. Failure to do so shall constitute an act of Default under this Contract. If Buyer, having applied
119 for the loan specified above, is unable to obtain such loan commitment and serves Notice to Seller within
120 the time specified, this Contract shall be null and void. If Notice of inability to obtain such loan
121 commitment is not served within the time specified, Buyer shall be deemed to have waived this
122 contingency and this Contract shall remain in full force and effect. Unless otherwise provided in
123 Paragraph 31, this Contract shall not be contingent upon the sale and/or closing of Buyer's existing real
124 estate. Buyer shall be deemed to have satisfied the financing conditions of this paragraph if Buyer obtains a
125 loan commitment in accordance with the terms of this paragraph even though the loan is conditioned on the
126 sale and/or closing of Buyer's existing real estate. If Seller at Seller's option and expense, within thirty (30)
127 days after Buyer's Notice, procures for Buyer such commitment or notifies Buyer that Seller will accept a

| Buyer Initial MVL | Buyer Initial | Seller Initial JW | Seller Initial _____ |
|---|---|---|---|
| Address 1305 E Palatine Rd | | | v5.0c |

3

128  purchase money mortgage upon the same terms, this Contract shall remain in full force and effect. In such
129  event, Seller shall notify Buyer within five (5) Business Days after Buyer's Notice of Seller's election to
130  provide or obtain such financing, and Buyer shall furnish to Seller or lender all requested information and
131  shall sign all papers necessary to obtain the mortgage commitment and to close the loan.

132  **12. HOMEOWNER INSURANCE:** This Contract is contingent upon Buyer obtaining evidence of insurability for
133  an Insurance Service Organization HO-3 or equivalent policy at standard premium rates within ten (10)
134  Business Days after the Date of Acceptance. **If Buyer is unable to obtain evidence of insurability and serves**
135  **Notice with proof of same to Seller within the time specified, this Contract shall be null and void. If**
136  **Notice is not served within the time specified, Buyer shall be deemed to have waived this contingency**
137  **and this Contract shall remain in full force and effect.**

138  **13. FLOOD INSURANCE:** Unless previously disclosed in the Illinois Residential Real Property Disclosure
139  Report, Buyer shall have the option to declare this Contract null and void if the Real Estate is located in a
140  special flood hazard area which requires Buyer to carry flood insurance. **If Notice of the option to declare**
141  **this Contract null and void is not given to Seller within ten (10) Business Days after the Date of**
142  **Acceptance or by the Mortgage Contingency deadline date described in Paragraph 11 (whichever is later),**
143  **Buyer shall be deemed to have waived such option and this Contract shall remain in full force and effect.**
144  Nothing herein shall be deemed to affect any rights afforded by the Residential Real Property Disclosure Act.

145  **14. CONDOMINIUM/COMMON INTEREST ASSOCIATIONS:** (If applicable) The Parties agree that the terms
146  contained in this paragraph, which may be contrary to other terms of this Contract, shall supersede any
147  conflicting terms.
148  (a)  Title when conveyed shall be good and merchantable, subject to terms, provisions, covenants and
149      conditions of the Declaration of Condominium/Covenants, Conditions and Restrictions and all
150      amendments; public and utility easements including any easements established by or implied from the
151      Declaration of Condominium/Covenants, Conditions and Restrictions or amendments thereto; party wall
152      rights and agreements; limitations and conditions imposed by the Condominium Property Act;
153      installments due after the date of Closing of general assessments established pursuant to the Declaration
154      of Condominium/Covenants, Conditions and Restrictions.
155  (b)  Seller shall be responsible for payment of all regular assessments due and levied prior to Closing and for
156      all special assessments confirmed prior to the Date of Acceptance.
157  (c)  Buyer has, within five (5) Business Days from the Date of Acceptance, the right to demand from Seller
158      items as stipulated by the Illinois Condominium Property Act, if applicable, and Seller shall diligently
159      apply for same. This Contract is subject to the condition that Seller be able to procure and provide to
160      Buyer, a release or waiver of any option of first refusal or other pre-emptive rights of purchase created by
161      the Declaration of Condominium/Covenants, Conditions and Restrictions within the time established by
162      the Declaration of Condominium/Covenants, Conditions and Restrictions. In the event the
163      Condominium Association requires the personal appearance of Buyer and/or additional documentation,
164      Buyer agrees to comply with same.
165  (d)  In the event the documents and information provided by Seller to Buyer disclose that the existing
166      improvements are in violation of existing rules, regulations or other restrictions or that the terms and
167      conditions contained within the documents would unreasonably restrict Buyer's use of the premises or
168      would result in financial obligations unacceptable to Buyer in connection with owning the Real Estate,
169      then Buyer may declare this Contract null and void by giving Seller Notice within five (5) Business Days
170      after the receipt of the documents and information required by Paragraph 14(c), listing those deficiencies
171      which are unacceptable to Buyer. If Notice is not served within the time specified, Buyer shall be deemed
172      to have waived this contingency, and this Contract shall remain in full force and effect.

| Buyer Initial __MK__ | Buyer Initial _____ | Seller Initial __UL__ | Seller Initial _____ | |
| Address __1305  E. Palatine  Road__ | | | | v5.0e |

4

173 (e) Seller shall not be obligated to provide a condominium survey.

174 (f) Seller shall provide a certificate of insurance showing Buyer and Buyer's mortgagee, if any, as an insured.

175 **15. THE DEED:** Seller shall convey or cause to be conveyed to Buyer or Buyer's designated grantee good and
176 merchantable title to the Real Estate by recordable general ~~Warranty~~ Deed, ~~with release of homestead rights,~~ *Trustees*
177 (or the appropriate deed if title is in trust or in an estate), and with real estate transfer stamps to be paid by
178 Seller (unless otherwise designated by local ordinance). Title when conveyed will be good and merchantable,
179 subject only to: general real estate taxes not due and payable at the time of Closing; covenants, conditions
180 and restrictions of record; and building lines and easements, if any, provided they do not interfere with the
181 current use and enjoyment of the Real Estate.

182 **16. TITLE:** At Seller's expense, Seller will deliver or cause to be delivered to Buyer or Buyer's attorney within
183 customary time limitations and sufficiently in advance of Closing, as evidence of title in Seller or Grantor, a
184 title commitment for an ALTA title insurance policy in the amount of the Purchase Price with extended
185 coverage by a title company licensed to operate in the State of Illinois, issued on or subsequent to the Date of
186 Acceptance, subject only to items listed in Paragraph 15. The requirement to provide extended coverage shall
187 not apply if the Real Estate is vacant land. The commitment for title insurance furnished by Seller will be
188 conclusive evidence of good and merchantable title as therein shown, subject only to the exceptions therein
189 stated. If the title commitment discloses any unpermitted exceptions or if the Plat of Survey shows any
190 encroachments or other survey matters that are not acceptable to Buyer, then Seller shall have said
191 exceptions, survey matters or encroachments removed, or have the title insurer commit to either insure
192 against loss or damage that may result from such exceptions or survey matters or insure against any court-
193 ordered removal of the encroachments. If Seller fails to have such exceptions waived or insured over prior to
194 Closing, Buyer may elect to take the title as it then is with the right to deduct from the Purchase Price prior
195 encumbrances of a definite or ascertainable amount. Seller shall furnish Buyer at Closing an Affidavit of Title
196 covering the date of Closing, and shall sign any other customary forms required for issuance of an ALTA
197 Insurance Policy.

198 **17. PLAT OF SURVEY:** Not less than one (1) Business Day prior to Closing, except where the Real Estate is a
199 condominium (see Paragraph 14) Seller shall, at Seller's expense, furnish to Buyer or Buyer's attorney a Plat
200 of Survey that conforms to the current Minimum Standards of Practice for boundary surveys, is dated not
201 more than six (6) months prior to the date of Closing, and is prepared by a professional land surveyor
202 licensed to practice land surveying under the laws of the State of Illinois. The Plat of Survey shall show
203 visible evidence of improvements, rights of way, easements, use and measurements of all parcel lines. The
204 land surveyor shall set monuments or witness corners at all accessible corners of the land. All such corners
205 shall also be visibly staked or flagged. The Plat of Survey shall include the following statement placed near
206 the professional land surveyor seal and signature: "This professional service conforms to the current Illinois
207 Minimum Standards for a boundary survey." A Mortgage Inspection, as defined, is not a boundary survey
208 and is not acceptable.

209 **18. ESCROW CLOSING:** At the election of either Party, not less than five (5) Business Days prior to Closing,
210 this sale shall be closed through an escrow with the lending institution or the title company in accordance
211 with the provisions of the usual form of Deed and Money Escrow Agreement, as agreed upon between the
212 Parties, with provisions inserted in the Escrow Agreement as may be required to conform with this Contract.
213 The cost of the escrow shall be paid by the Party requesting the escrow. If this transaction is a cash purchase
214 (no mortgage is secured by Buyer), the Parties shall share the title company escrow closing fee equally.

215 **19. DAMAGE TO REAL ESTATE OR CONDEMNATION PRIOR TO CLOSING:** If prior to delivery of the deed the
216 Real Estate shall be destroyed or materially damaged by fire or other casualty, or the Real Estate is taken by

Buyer Initial ___MK___   Buyer Initial _____   Seller Initial ___*M~*___   Seller Initial _____
Address ___1305 E. Palatine Road___                                                    v5.0e

5

217 condemnation, then Buyer shall have the option of either terminating this Contract (and receiving a refund of
218 earnest money) or accepting the Real Estate as damaged or destroyed, together with the proceeds of the
219 condemnation award or any insurance payable as a result of the destruction or damage, which gross
220 proceeds Seller agrees to assign to Buyer and deliver to Buyer at Closing. Seller shall not be obligated to
221 repair or replace damaged improvements. The provisions of the Uniform Vendor and Purchaser Risk Act of
222 the State of Illinois shall be applicable to this Contract, except as modified by this paragraph.

223 **20. REAL ESTATE TAX ESCROW:** In the event the Real Estate is improved, but has not been previously taxed
224 for the entire year as currently improved, the sum of three percent (3%) of the Purchase Price shall be
225 deposited in escrow with the title company with the cost of the escrow to be divided equally by Buyer and
226 Seller and paid at Closing. When the exact amount of the taxes to be prorated under this Contract can be
227 ascertained, the taxes shall be prorated by Seller's attorney at the request of either Party and Seller's share of
228 such tax liability after proration shall be paid to Buyer from the escrow funds and the balance, if any, shall be
229 paid to Seller. If Seller's obligation after such proration exceeds the amount of the escrow funds, Seller agrees
230 to pay such excess promptly upon demand.

231 **21. SELLER REPRESENTATIONS:** Seller represents that with respect to the Real Estate Seller has no
232 knowledge of nor has Seller received written notice from any governmental body regarding:
233 (a) zoning, building, fire or health code violations that have not been corrected;
234 (b) any pending rezoning;
235 (c) boundary line disputes;
236 (d) any pending condemnation or Eminent Domain proceeding;
237 (e) easements or claims of easements not shown on the public records;
238 (f) any hazardous waste on the Real Estate;
239 (g) any improvements to the Real Estate for which the required permits were not obtained;
240 (h) any improvements to the Real Estate which are not included in full in the determination of the most
241 recent tax assessment; or
242 (i) any improvements to the Real Estate which are eligible for the home improvement tax exemption.

243 Seller further represents that:
244 1. There [check one] ❏ is ☒ is not a pending or unconfirmed special assessment affecting the Real Estate by
245 any association or governmental entity payable by Buyer after date of Closing.
246 2. The Real Estate [check one] ❏ is ☒ is not located within a Special Assessment Area or Special Service
247 Area, payments for which will not be the obligation of Seller after the year in which the Closing occurs.
248 If any of the representations contained herein regarding a Special Assessment Area or Special Service
249 Area are unacceptable to Buyer, Buyer shall have the option to declare this Contract null and void. If
250 Notice of the option to declare this Contract null and void is not given to Seller within ten (10) Business
251 Days after the Date of Acceptance or by the Mortgage Contingency deadline date described in Paragraph
252 11 (whichever is later), Buyer shall be deemed to have waived such option and this Contract shall remain
253 in full force and effect. Seller's representations contained in this paragraph shall survive the Closing.

254 **22. CONDITION OF REAL ESTATE AND INSPECTION:** Seller agrees to leave the Real Estate in broom clean
255 condition. All refuse and personal property that is not to be conveyed to Buyer shall be removed from the
256 Real Estate at Seller's expense prior to delivery of Possession. Buyer shall have the right to inspect the Real
257 Estate, fixtures and included Personal Property prior to Possession to verify that the Real Estate,
258 improvements and included Personal Property are in substantially the same condition as of the Date of
259 Acceptance, normal wear and tear excepted.

| Buyer Initial  WK | Buyer Initial _____ | Seller Initial  ⟨W⟩ | Seller Initial _____ | |
| Address  1305 E. Palatine Road | | | | v5.0 |

6

260  **23. MUNICIPAL ORDINANCE, TRANSFER TAX, AND GOVERNMENTAL COMPLIANCE:**
261  (a) Parties are cautioned that the Real Estate may be situated in a municipality that has adopted a pre-closing
262      inspection requirement, municipal Transfer Tax or other similar ordinances. Transfer taxes required by
263      municipal ordinance shall be paid by the party designated in such ordinance.
264  (b) Parties agree to comply with the reporting requirements of the applicable sections of the Internal
265      Revenue Code and the Real Estate Settlement Procedures Act of 1974, as amended.

266  **24. BUSINESS DAYS/HOURS:** Business Days are defined as Monday through Friday, excluding Federal
267  holidays. Business Hours are defined as 8:00 A.M. to 6:00 P.M. Chicago time.

268  **25. FACSIMILE OR DIGITAL SIGNATURES:** Facsimile or digital signatures shall be sufficient for purposes of
269  executing, negotiating, and finalizing this Contract.

270  **26. DIRECTION TO ESCROWEE:** In every instance where this Contract shall be deemed null and void or if this
271  Contract may be terminated by either Party, the following shall be deemed incorporated: "and earnest money
272  refunded to Buyer upon written direction of the Parties to Escrowee or upon entry of an order by a court of
273  competent jurisdiction". There shall be no disbursement of earnest money unless Escrowee has been
274  provided written direction from Seller and Buyer. Absent a direction relative to the disbursement of earnest
275  money within a reasonable period of time, Escrowee may deposit funds with the Clerk of the ~~Circuit~~ Court
276  by the filing of an action in the nature of Interpleader. Escrowee shall be reimbursed from the earnest money
277  for all costs, including reasonable attorney fees, related to the filing of the Interpleader action. Seller and
278  Buyer shall indemnify and hold Escrowee harmless from any and all conflicting claims and demands arising
279  under this paragraph.

280  **27. NOTICE:** Except as provided in Paragraph 31(C)(2) regarding the manner of service for "kick-out"
281  Notices, all Notices shall be in writing and shall be served by one Party or attorney to the other Party or
282  attorney. Notice to any one of a multiple person Party shall be sufficient Notice to all. Notice shall be given in
283  the following manner:
284  (a) By personal delivery; or
285  (b) By mailing to the addresses recited herein by regular mail and by certified mail, return receipt requested.
286      Except as otherwise provided herein, Notice served by certified mail shall be effective on the date of
287      mailing; or
288  (c) By facsimile transmission. Notice shall be effective as of date and time of the transmission, provided that
289      the Notice transmitted shall be sent on Business Days during Business Hours. In the event Notice is
290      transmitted during non-business hours, the effective date and time of Notice is the first hour of the next
291      Business Day after transmission; or
292  (d) By e-mail transmission if an e-mail address has been furnished by the recipient Party or the recipient
293      Party's attorney to the sending Party or is shown on this Contract. Notice shall be effective as of date and
294      time of e-mail transmission, provided that, in the event e-mail Notice is transmitted during non-business
295      hours, the effective date and time of Notice is the first hour of the next Business Day after transmission.
296      An attorney or Party may opt out of future e-mail Notice by any form of Notice provided by this
297      Contract; or
298  (e) By commercial overnight delivery (e.g., FedEx). Such Notice shall be effective on the next Business Day
299      following deposit with the overnight delivery company.

300  **28. PERFORMANCE:** Time is of the essence of this Contract. In any action with respect to this Contract, the
301  Parties are free to pursue any legal remedies at law or in equity and the prevailing Party in litigation shall be
302  entitled to collect reasonable attorney fees and costs from the non-Prevailing Party as ordered by a court of
303  competent jurisdiction.

| Buyer Initial   MK   Buyer Initial _____ | Seller Initial _____ | Seller Initial _____ |
| Address   1305 E Palatine Road | | v5.0 |

304  **29. CHOICE OF LAW/GOOD FAITH:** All terms and provisions of this Contract including but not limited to the
305  Attorney Review and Professional Inspection Paragraphs shall be governed by the laws of the State of Illinois
306  and are subject to the covenant of good faith and fair dealing implied in all Illinois contracts.

307  **30. OTHER PROVISIONS:** This Contract is also subject to those OPTIONAL PROVISIONS initialed by the
308  Parties and the following attachments, if any: _____
309  _____

310  **OPTIONAL PROVISIONS (Applicable ONLY if initialed by all Parties)**

311  ____ ____ ____       **31. SALE OF BUYER'S REAL ESTATE:**
312  [Initials]
313  (A) **REPRESENTATIONS ABOUT BUYER'S REAL ESTATE:** Buyer represents to Seller as follows:
314      (1) Buyer owns real estate commonly known as (address): _____
315      _____
316      (2) Buyer [check one] ☐ has ☐ has not entered into a contract to sell said real estate.
317          If Buyer has entered into a contract to sell said real estate, that contract:
318          (a) [check one] ☐ is ☐ is not subject to a mortgage contingency.
319          (b) [check one] ☐ is ☐ is not subject to a real estate sale contingency.
320          (c) [check one] ☐ is ☐ is not subject to a real estate closing contingency.
321      (3) Buyer [check one] ☐ has ☐ has not listed said real estate for sale with a licensed real estate broker and
322          in a local multiple listing service.
323      (4) If Buyer's real estate is not listed for sale with a licensed real estate broker and in a local multiple
324          listing service, Buyer [check one]
325          (a) ☐ Shall list said real estate for sale with a licensed real estate broker who will place it in a local
326              multiple listing service within five (5) Business Days after the Date of Acceptance.
327              [For information only] Broker: _____
328              Broker's Address: _____ Phone: _____
329          (b) ☐ Does not intend to list said real estate for sale.
330  (B) **CONTINGENCIES BASED UPON SALE AND/OR CLOSE OF BUYER'S REAL ESTATE:**
331      (1) This Contract is contingent upon Buyer having entered into a contract for the sale of Buyer's real
332          estate that is in full force and effect as of _____, 20____. Such contract should provide
333          for a closing date not later than the Closing Date set forth in this Contract. If Notice is served on or
334          before the date set forth in this subparagraph that Buyer has not procured a contract for the sale of
335          Buyer's real estate, this Contract shall be null and void. If Notice that Buyer has not procured a
336          contract for the sale of Buyer's real estate is not served on or before the close of business on the
337          date set forth in this subparagraph, Buyer shall be deemed to have waived all contingencies
338          contained in this Paragraph 31, and this Contract shall remain in full force and effect. (If this
339          paragraph is used, then the following paragraph **must** be completed.)
340      (2) In the event Buyer has entered into a contract for the sale of Buyer's real estate as set forth in
341          Paragraph 31(B)(1) and that contract is in full force and effect, or has entered into a contract for the
342          sale of Buyer's real estate prior to the execution of this Contract, this Contract is contingent upon
343          Buyer closing the sale of Buyer's real estate on or before _____, 20____. If Notice that
344          Buyer has not closed the sale of Buyer's real estate is served before the close of business on the
345          next Business Day after the date set forth in the preceding sentence, this Contract shall be null and
346          void. If Notice is not served as described in the preceding sentence, Buyer shall be deemed to have
347          waived all contingencies contained in this Paragraph 31, and this Contract shall remain in full
348          force and effect.

| Buyer Initial MK | Buyer Initial ____ | Seller Initial W | Seller Initial ____ |
|---|---|---|---|
| Address  1305 E. Palatine Road | | | v5.0 |

349   (3) If the contract for the sale of Buyer's real estate is terminated for any reason after the date set forth in
350       Paragraph 31(B)(1) (or after the date of this Contract if no date is set forth in Paragraph 31(B)(1)),
351       Buyer shall, within three (3) Business Days of such termination, notify Seller of said termination.
352       Unless Buyer, as part of said Notice, waives all contingencies in Paragraph 31 and complies with
353       Paragraph 31(D), this Contract shall be null and void as of the date of Notice. If Notice as required
354       by this subparagraph is not served within the time specified, Buyer shall be in default under the
355       terms of this Contract.

356 **(C) SELLER'S RIGHT TO CONTINUE TO OFFER REAL ESTATE FOR SALE:** During the time of this contingency,
357 Seller has the right to continue to show the Real Estate and offer it for sale subject to the following:
358   (1) If Seller accepts another bona fide offer to purchase the Real Estate while the contingencies expressed
359       in Paragraph 31(B) are in effect, Seller shall notify Buyer in writing of same. Buyer shall then have
360       _____ hours after Seller gives such Notice to waive the contingencies set forth in Paragraph
361       31(B), subject to Paragraph 31(D).
362   (2) Seller's Notice to Buyer (commonly referred to as a 'kick-out' Notice) shall be in writing and shall be
363       served on Buyer, not Buyer's attorney or Buyer's real estate agent. Courtesy copies of such "kick-out"
364       Notice should be sent to Buyer's attorney and Buyer's real estate agent, if known. Failure to provide
365       such courtesy copies shall not render Notice invalid. Notice to any one of a multiple-person Buyer
366       shall be sufficient Notice to all Buyers. Notice for the purpose of this subparagraph only shall be
367       served upon Buyer in the following manner:
368       (a) By personal delivery effective at the time and date of personal delivery; or
369       (b) By mailing to the addresses recited herein for Buyer by regular mail and by certified mail. Notice
370          shall be effective at 10:00 A.M. on the morning of the second day following deposit of Notice in
371          the U.S. Mail; or
372       (c) By commercial overnight delivery (e.g., FedEx). Notice shall be effective upon delivery or at 4:00
373          P.M. Chicago time on the next delivery day following deposit with the overnight delivery
374          company, whichever first occurs.
375   (3) If Buyer complies with the provisions of Paragraph 31(D) then this Contract shall remain in full force
376       and effect.
377   (4) If the contingencies set forth in Paragraph 31(B) are NOT waived in writing within said time period
378       by Buyer, this Contract shall be null and void.
379   (5) Except as provided in Paragraph 31(C)(2) above, all Notices shall be made in the manner provided by
380       Paragraph 27 of this Contract.
381   (6) Buyer waives any ethical objection to the delivery of Notice under this paragraph by Seller's attorney
382       or representative.
383 **(D) WAIVER OF PARAGRAPH 31 CONTINGENCIES:** Buyer shall be deemed to have waived the contingencies in
384 Paragraph 31(B) when Buyer has delivered written waiver and deposited with the Escrowee additional
385 earnest money in the amount of $_____ in the form of a cashier's or certified check within the
386 time specified. If Buyer fails to deposit the additional earnest money within the time specified, the waiver
387 shall be deemed ineffective and this Contract shall be null and void.
388 **(E) BUYER COOPERATION REQUIRED:** Buyer authorizes Seller or Seller's agent to verify representations
389 contained in Paragraph 31 at any time, and Buyer agrees to cooperate in providing relevant information.

390 _____ ____ ___ ____ **32. CANCELLATION OF PRIOR REAL ESTATE CONTRACT:** In the event either Party has
391 entered into a prior real estate contract, this Contract shall be subject to written cancellation of the prior
392 contract on or before _____, 20____. In the event the prior contract is not cancelled within the
393 time specified, this Contract shall be null and void. Seller's notice to the purchaser under the prior

| Buyer Initial | MK | Buyer Initial | | Seller Initial | M | Seller Initial | |
|---|---|---|---|---|---|---|---|
| Address | 1305 E Palatine Road | | | | | | v5.0 |

394 contract should not be served until after Attorney Review and Professional Inspections provisions of this
395 Contract have expired, been satisfied or waived.

396 \_\_\_ \_\_\_ \_\_\_ \_\_\_ **33. CREDIT AT CLOSING:** Provided Buyer's lender permits such credit to show on the
397 HUD-1 Settlement Statement, and if not, such lesser amount as the lender permits, Seller agrees to credit to
398 Buyer at Closing $_____ to be applied to prepaid expenses, closing costs or both.

399 \_\_\_ \_\_\_ \_\_\_ \_\_\_ **34. INTEREST BEARING ACCOUNT:** Earnest money (with a completed W-9 and other
400 required forms), shall be held in a federally insured interest bearing account at a financial institution
401 designated by Escrowee. All interest earned on the earnest money shall accrue to the benefit of and be paid to
402 Buyer. Buyer shall be responsible for any administrative fee (not to exceed $100) charged for setting up the
403 account. In anticipation of Closing, the Parties direct Escrowee to close the account no sooner than ten (10)
404 Business Days prior to the anticipated Closing date.

405 \_\_\_ \_\_\_ \_\_\_ \_\_\_ **35. VA OR FHA FINANCING:** If Buyer is seeking VA or FHA financing, this provision shall
406 be applicable: **Required FHA or VA amendments and disclosures shall be attached to this Contract.** If VA,
407 the Funding Fee, or if FHA, the Mortgage Insurance Premium (MIP) shall be paid by Buyer and *[check one]*
408 □ shall □ shall not be added to the mortgage loan amount.

409 \_\_\_ \_\_\_ \_\_\_ \_\_\_ **36. INTERIM FINANCING:** This Contract is contingent upon Buyer obtaining a written
410 commitment for interim financing on or before _____, 20\_\_\_ in the amount of $_____.
411 If Buyer is unable to secure the interim financing commitment and gives Notice to Seller within the time
412 specified, this Contract shall be null and void. If Notice is not served within the time specified, this
413 provision shall be deemed waived by the Parties and this Contract shall remain in full force and effect.

414 \_\_\_ \_\_\_ \_\_\_ \_\_\_ **37. WELL AND/OR SEPTIC/SANITARY INSPECTIONS:** Seller shall obtain at Seller's
415 expense a well water test stating that the well delivers not less than five (5) gallons of water per minute and
416 including a bacteria and nitrate test (and lead test for FHA loans) and/or a septic report from the applicable
417 County Health Department, a Licensed Environmental Health Practitioner, or a licensed well and septic
418 inspector, each dated not more than ninety (90) days prior to Closing, stating that the well and water supply
419 and the private sanitary system are in proper operating condition with no defects noted. Seller shall remedy
420 any defect or deficiency disclosed by said report(s) prior to Closing, provided that if the cost of remedying a
421 defect or deficiency and the cost of landscaping together exceed $3,000.00, and if the Parties cannot reach
422 agreement regarding payment of such additional cost, this Contract may be terminated by either Party.
423 Additional testing recommended by the report shall be obtained at Seller's expense. If the report
424 recommends additional testing after Closing, the Parties shall have the option of establishing an escrow with
425 a mutual cost allocation for necessary repairs or replacements, or either Party may terminate this Contract
426 prior to Closing. Seller shall deliver a copy of such evaluation(s) to Buyer no less than one (1) Business Day
427 prior to Closing.

428 \_\_\_ \_\_\_ \_\_\_ \_\_\_ **38. WOOD DESTROYING INFESTATION:** Notwithstanding the provisions of Paragraph 10,
429 within ten (10) Business Days after the Date of Acceptance, Seller at Seller's expense shall deliver to Buyer a
430 written report, dated not more than six (6) months prior to the date of Closing, by a licensed inspector
431 certified by the appropriate state regulatory authority in the subcategory of termites, stating that there is no
432 visible evidence of active infestation by termites or other wood destroying insects. Unless otherwise agreed
433 between the Parties, if the report discloses evidence of active infestation or structural damage, Buyer has the
434 option within five (5) Business Days of receipt of the report to proceed with the purchase or declare this
435 Contract null and void.

Buyer Initial \_\_MK\_\_   Buyer Initial _____   Seller Initial \_\_WW\_\_   Seller Initial _____
Address \_1305 E Palatine Road\_   v5.0

436 ___ ___ ___ ___ **39. POST-CLOSING POSSESSION:** Possession shall be delivered no later than 11:59 P.M.
437 on the date that is _____ days after the date of Closing ("the Possession Date"). Seller shall be responsible
438 for all utilities, contents and liability insurance, and home maintenance expenses until delivery of possession.
439 Seller shall deposit in escrow at Closing with _____, *[check one]* ❑ one percent (1%) of the
440 Purchase Price or ❑ the sum of $_____ to be paid by Escrowee as follows:
441 (a) The sum of $_____ per day for use and occupancy from and including the day after
442      Closing to and including the day of delivery of Possession, if on or before the Possession Date;
443 (b) The amount per day equal to three (3) times the daily amount set forth herein shall be paid for each day
444      after the Possession Date specified in this paragraph that Seller remains in possession of the Real Estate;
445      and
446 (c) The balance, if any, to Seller after delivery of Possession and provided that the terms of Paragraph 22
447      have been satisfied. Seller's liability under this paragraph shall not be limited to the amount of the
448      possession escrow deposit referred to above. Nothing herein shall be deemed to create a
449      Landlord/Tenant relationship between the Parties.

450 MK ___ ___ ___ **40. "AS IS" CONDITION:** This Contract is for the sale and purchase of the Real Estate in its
451 "As Is" condition as of the Date of Offer. Buyer acknowledges that no representations, warranties or
452 guarantees with respect to the condition of the Real Estate have been made by Seller or Seller's Designated
453 Agent other than those known defects, if any, disclosed by Seller. Buyer may conduct an inspection at
454 Buyer's expense. In that event, Seller shall make the Real Estate available to Buyer's inspector at reasonable
455 times. Buyer shall indemnify Seller and hold Seller harmless from and against any loss or damage caused by
456 the acts or negligence of Buyer or any person performing any inspection. **In the event the inspection reveals**
457 **that the condition of the Real Estate is unacceptable to Buyer and Buyer so notifies Seller within five (5)**
458 **Business Days after the Date of Acceptance, this Contract shall be null and void. Failure of Buyer to notify**
459 **Seller or to conduct said inspection operates as a waiver of Buyer's right to terminate this Contract under**
460 **this paragraph and this Contract shall remain in full force and effect.** Buyer acknowledges that the
461 provisions of Paragraph 10 and the warranty provisions of Paragraph 3 do not apply to this Contract.

462 ___ ___ ___ ___ **41. CONFIRMATION OF DUAL AGENCY:** The Parties confirm that they have previously
463 consented to _____
464 (Licensee) acting as a Dual Agent in providing brokerage services on their behalf and specifically consent to
465 Licensee acting as a Dual Agent with regard to the transaction referred to in this Contract.

466 ___ ___ ___ ___ **42. SPECIFIED PARTY APPROVAL:** This Contract is contingent upon the approval of the
467 Real Estate by _____
468 Buyer's Specified Party, within five (5) Business Days after the Date of Acceptance. In the event Buyer's
469 Specified Party does not approve of the Real Estate and Notice is given to Seller within the time specified,
470 this Contract shall be null and void. If Notice is not served within the time specified, this provision shall be
471 deemed waived by the Parties and this Contract shall remain in full force and effect.

472 MK ___ ___ ___ **43. MISCELLANEOUS PROVISIONS:** Buyer's and Seller's obligations are contingent upon
473 the Parties entering into a separate written agreement consistent with the terms and conditions set forth
474 herein, and with such additional terms as either Party may deem necessary, providing for one or more of the
475 following: *(check applicable boxes)*
476 ❑ Articles of Agreement for Deed or          ❑ Assumption of Seller's Mortgage          ❑ Commercial/Investment
477      Purchase Money Mortgage          ❑ Cooperative Apartment          ❑ New Construction
478 ❑ Short Sale          ❑ Tax-Deferred Exchange          ❑ Vacant Land

☒ Rider No.1  bankruptcy sale

| Buyer Initial MK | Buyer Initial _____ | Seller Initial ____/W/____ | Seller Initial _____ |
|---|---|---|---|
| Address 1305 E. Palatine Road | | | v5.0 |

11

479 THIS DOCUMENT WILL BECOME A LEGALLY BINDING CONTRACT WHEN SIGNED BY ALL PARTIES AND
480 DELIVERED TO THE PARTIES OR THEIR AGENTS.

481 The Parties represent that the text of this form has not been altered and is identical to the official Multi-Board
482 Residential Real Estate Contract 5.0.

483 10/13/2010
484 Date of Offer

485
486 Buyer Signature

487
488 Buyer Signature

489 MEHUL KALA
490 Print Buyer(s) Name(s) *[Required]*

491 1620 Woodduck Ln #2A
492 Address

493 Wheeling          IL          60090
494 City                   State          Zip

495 408.507.8024    mehul@anaksinc.com
496 Phone                              E-mail

---

483 DATE OF ACCEPTANCE    10.28.10
484 DATE OF ACCEPTANCE

485 On MMM , Trustee
486 Seller Signature

487
488 Seller Signature

489 Andrew J. Maxwell
490 Print Seller(s) Name(s) *[Required]*

491 105 W. Adams Suite 3200
492 Address

493 Chicago IL 60603
494 City                   State          Zip

495 312-368-1138
496 Phone                              E-mail

497                          FOR INFORMATION ONLY

498 Exit Realty Advantage    1314
499 Buyer's Broker          MLS #

500 Kapil Daryani          922637
501 Buyer's Designated Agent    MLS #

502 551 998 1881    224 232 5050
503 Phone                    Fax

504 daryani.kapil@gmail.com
505 E-mail

506 Shawn Bolger
507 Buyer's Attorney          E-mail

508 847-455-3883    /
509 Phone                    Fax

510 Professional Mortgage Solutions
511 Mortgage Company          Phone

512 Ashok Lakshmann  630-205-8676
513 Loan Officer          Phone/Fax

---

498 @properties
499 Seller's Broker          MLS #

500 Karen Pence          174807
501 Seller's Designated Agent    MLS #

502 847-507-3398    312-276-4843
503 Phone                    Fax

504 Kpence@atproperties.com
505 E-mail

506 Vik Barad  vbarad@maxwellard
507 Seller's Attorney          E-mail    polts.
                                            con
508 312-248-1138    368-1080
509 Phone                    Fax

510 Homeowner's/Condo Association (if any)    Phone

512 Management Co./Other Contact          Phone

514 ©2009, Illinois Real Estate Lawyers Association. All rights reserved. **Unauthorized duplication or alteration of this form or**
515 **any portion thereof is prohibited.** Official form is approved at www.irela.org (web site of Illinois Real Estate Lawyers
516 Association).
517 Approved by the following organizations as of July 20, 2009
518 Illinois Real Estate Lawyers Association · DuPage County Bar Association · Will County Bar Association
   Northwest Suburban Bar Association · Chicago Association of REALTORS®
519 Mainstreet Organization of REALTORS® · Aurora-Tri County Association of REALTORS® · West Towns Board of REALTORS®
520 REALTOR® Association of Northwest Chicagoland · REALTOR® Association of the Fox Valley
521 Oak Park Area Association of REALTORS® · McHenry Association of REALTORS® · Three Rivers Association of REALTORS®
522 North Shore—Barrington Association of REALTORS®

523 Seller Rejection: This offer was presented to Seller on _____, 20___ at ____:____ AM/PM
524 and rejected on _____, 20___ at ____:____ AM/PM _____ (Seller initials).

Buyer Initial MK    Buyer Initial _____    Seller Initial _____    Seller Initial _____
Address 1305 E Palatine Road                                                    v5.0

12

O:\MAXWELL FILES\Trustee (AJM) cases\De Simone, C & J (1-2010)\RE contract rider (DeSimone).doc

## RIDER No. 1

This Rider is made a part of that certain contract for the purchase of 1305 E. Palatine, Palatine Illinois (the "Contract") and is incorporated by reference therein. Notwithstanding anything to the contrary set forth in the Contract:

1. The Contract is subject to Court approval in the bankruptcy case of In re: Candice and John De Simone, case no. 09 B 45896, ("Bankruptcy Case") pending in the United States Bankruptcy Court for the Northern District of Illinois ("Court"). Seller's failure to obtain Court approval of the Contract shall not be an event of default by the Seller, and Seller may terminate the Contract if court approval is not obtained.

2. No real estate broker's commission or other compensation or reimbursement of expenses to any broker shall be due and payable except upon approval of the Court in the Bankruptcy Case, closing of the sale, and disbursement of the proceeds of sale to Trustee.

3. The real estate shall be sold "as is/where is", without any warranties of any kind or nature, except as to title.

4. If there is any conflict between the terms of the Contract and the terms of this Rider, the terms of this Rider shall control.

5. Any dispute or controversy regarding the Contract or the sale of the real estate shall be determined by the Court upon proper motion

Andrew J. Maxwell, solely
as Trustee and not individually

Buyer: 10/13/2010

MEHUL KALA



BUFFALO GROVE
105 W. DUNDEE
BUFFALO GROVE, IL 60089

10/26/2010

Reference Letter

To Whom It May Concern:

This is to certify that the title of the following account(s) reflects
MEHUL MUKESH KALA
of
1620 WOODDUCK LN APT 2A
WHEELING, IL 60090

as an account holder.

| Account Type | Account Number | Balance | Date Opened |
|---|---|---|---|
| REGULAR CHECKING | 905647452 | $127,708.61 | 01/13/1999 |

The above mentioned balance(s) represents the accumulation of successive deposits.

Sincerely,

JUSTINM WANKOVSKY

Citibank Financial Associate

CITIBANK
105 W. Dundee Road
Buffalo Grove, IL 60089

Citibank, N.A., Member FDIC

# Professional Mortgage Solutions, Inc
## (An Illinois Residential Mortgage Licensee)

Wednesday, October 27, 2010

**MEHUL MUKESH KALA**
**1620 WOODDUCK LN APT#2A**
**Wheeling, IL 60090**

Dear Mr. Kala,

This letter is to inform you that we have pre-approved your mortgage loan request. You are well qualified to finance a loan in the loan amount of **$375,000** at the current prevailing interest rates.

Please be aware however, that we must completely document and further verify the information you provided before being able to unconditionally approve a loan. If any discrepancies would arise we reserve the right to reevaluate our pre-approval.

This pre-approval is based solely upon information you have provided.

Thank you for choosing **PROFESSIONAL MORTGAGE SOLUTIONS, INC** to help you to finance your new home.

Sincerely,

Ashok Lakshmanan
Broker/Owner
630-205-8676
ashok@pmsi.us
www.pmsi.us

2900 Ogden Ave, Suite B, Lisle IL 60532. PH: 630-717-3600. Fax - 815-366-8072

**MEHUL M KALA**
1620 WOODDUCK LN, APT # 2A
WHEELING, IL 60090

2-7080-2710

1660

National Park

10/26/2010

Pay to the order of ___ @ properties ___ $ 2000 00/100

only two thousand and 00/100 ___ Dollars

**CITIBANK, N.A. BR. #101**
69 WEST WASHINGTON STREET
CHICAGO, IL 60602

Memo Earnest money 1305 pabtine    Mehul Kala    MP

⑆271070801⑆090564745211⑈ 1660